**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| B2B CFO Partners, LLC; et al., | ) | No. CV 09-2158-PHX-JAT |
| Plaintiffs, | ) | |
| vs. | ) | **ORDER** |
| Kenneth A. Kaufman; et al., | ) | |
| Defendants. | ) | |

Pending before the Court are Plaintiffs' Second Motion for Partial Summary Judgment (Doc. 99), Defendants' Cross Motion for Partial Summary Judgment on Damages (Doc. 113), and Defendants' Motion to Strike Exhibits from Affidavit of Jerry Mills (Doc. 112). The Court now rules on the Motions.

**BACKGROUND**

Plaintiffs claim that Plaintiff B2B CFO Partners, LLC ("B2B CFO Partners") is the largest and most successful CFO business in the United States. A company in the CFO business serves small to medium-sized business owners who need someone with financial expertise beyond that of an accountant or bookkeeper, but who cannot afford, or choose not to hire, a permanent CFO. CFO businesses recruit experienced CFOs to become partners or members in the CFO business, then offer the member CFOs to small and medium-sized companies on a part-time basis.

Plaintiff Jerry Mills drafted a training manual in 2001 that tracked his experience with and vision for a CFO business. He marked the 2001 manual with the following copyright notice: © 2001 B2B CFO, LLC. As B2B CFO Partners grew, Mills decided he needed to supplement and update the existing training manual. Mills completed the revisions in 2005.

The revisions documented what Mills had learned over twenty years about the CFO industry. Mills claims he spent 500 to 600 hours researching and 2500 to 3000 hours writing the revised manual. Mills marked the revised manual (the "2005 Manual") with the following copyright notice: © 2005 B2B CFO/CIO, LLP. Mills registered the copyright on the 2005 Manual (No. TXu001617758) on October 13, 2009. The 2001 and 2005 Manuals contain Mills's framework for creating and operating a successful CFO business.

Mills distributed the 2005 Manual only to partners of B2B CFO Partners and only after each partner had signed an operating, or partnership, agreement. Mills believed that making partners sign an operating agreement would adequately maintain the confidentiality of the 2005 Manual.

Mills met Defendant Kenneth Kaufman in 2006. At that time, Kaufman was attempting to run his own personal CFO business in Las Vegas, Nevada. Kaufman became a partner of B2B CFO Partners and signed a partnership agreement on March 24, 2006. After Kaufman became a partner, he received a copy of the 2005 Manual, as well as the B2B CFO Partners sales brochure and other trade materials.

Kaufman worked as a partner with B2B CFO Partners through the end of 2006, but left the company in January 2007. Plaintiffs claim the other partners asked Kaufman to resign, and Defendants claim he left voluntarily left. Some time after Kaufman left B2B CFO Partners, he formed entities to operate in the CFO business, including CFO Wise Inc. and The CFO Wise Promise LLC (collectively, "CFO Wise").

Kaufman created training manuals for his new CFO business. Plaintiffs claim that Kaufman's 2008 Manual and 2009 Manual (collectively, the CFO Wise Manuals) infringe on Plaintiffs' copyright for the 2005 Manual.

1  Plaintiffs have filed a Motion for Partial Summary Judgment on the issue of copyright
2  infringement of the 2005 Manual.  Plaintiffs also want the Court to enjoin Defendants from
3  using any manual or other product that infringes Plaintiffs' copyright in the 2005 Manual.
4  Defendants have moved for partial summary judgment on the issue of statutory damages and
5  attorneys' fees under the Copyright Act.  The Court now rules on the Motions.

## ANALYSIS AND CONCLUSION

### *Legal Standard*

8  Summary judgment is appropriate when "there is no genuine issue as to any material
9  fact and that the moving party is entitled to summary judgment as a matter of law."
10 F.R.Civ.P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must
11 support that assertion by "citing to particular parts of materials in the record," including
12 depositions, affidavits, interrogatory answers or other materials, or by "showing that
13 materials cited do not establish the absence or presence of a genuine dispute, or that an
14 adverse party cannot produce admissible evidence to support the fact." F.R.Civ.P. 56(c)(1).
15 Thus, summary judgment is mandated "against a party who fails to make a showing
16 sufficient to establish the existence of an element essential to that party's case, and on which
17 that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
18 (1986).

19 Initially, the movant bears the burden of pointing out to the Court the basis for the
20 motion and the elements of the causes of action upon which the non-movant will be unable
21 to establish a genuine issue of material fact. *Id*. at 323.  The burden then shifts to the
22 non-movant to establish the existence of material fact. *Id.*  The non-movant "must do more
23 than simply show that there is some metaphysical doubt as to the material facts" by
24 "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'"
25 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting
26 F.R.Civ.P. 56(e) (1963) (amended 2010)).  A dispute about a fact is "genuine" if the evidence
27 is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v.*
28 *Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986).  The non-movant's bare assertions, standing

1 alone, are insufficient to create a material issue of fact and defeat a motion for summary
2 judgment. *Id.* at 247–48. However, in the summary judgment context, the Court construes
3 all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*,
4 357 F.3d 1072, 1075 (9th Cir. 2004).

*Plaintiffs' Motion for Summary Judgment*

6 For Plaintiffs to establish copyright infringement, they must prove: "(1) ownership of
7 a valid copyright, and (2) copying of constituent elements of the work that are original."
8 *Feist Publ'n, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). The Court reaches
9 the issue of infringement only if Plaintiffs demonstrate that the 2005 Manual is entitled to
10 copyright protection.

11 With respect to the first element, Plaintiffs undisputedly registered the copyright for
12 the 2005 Manual with the United States Copyright Office on October 13, 2009. Plaintiffs'
13 certificate of registration entitles them to a "rebuttable presumption of originality" for the
14 2005 Manual. *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1075 (9th Cir. 2000)(internal
15 citations omitted). To overcome the presumption of validity, Defendants must show why the
16 2005 Manual is not copyrightable. *Id.* at 1076. The presumption of validity does not extend
17 to infringement, the second element of a copyright claim. *Smith v. Jackson*, 84 F.3d 1213,
18 1219 (9th Cir. 1996).

19 Defendants argue that the 2005 Manual is not entitled to copyright protection because
20 it lacks the requisite originality. They assert that the Manual contains only general business
21 ideas and concepts, which are not protected by copyright law.

22 To qualify for copyright protection, a work must be original to the creator. *Feist*, 499
23 U.S. at 345. "Original," in copyright parlance, means "only that the work was independently
24 created by the author (as opposed to copied from other works), and that it possesses at least
25 some minimal degree of creativity." *Id.* (citing M. Nimmer & D. Nimmer, Copyright
26 §§2.01[A], [B](1990)). The requisite level of creativity is "extremely low; even a slight
27 amount will suffice. The vast majority of works make the grade quite easily, as they possess
28 some creative spark, no matter how crude, humble or obvious it might be." *Id.* (internal

1 citations omitted). So, while facts are not copyrightable, factual compilations can be protected by copyright. *Id*. at 348.

Even if a work is copyrighted, protection may not extend to every element of the work. *Id*. A copyright does not cover the facts and ideas included in a work. *Id*. at 349. It is the author's organization and expression of the facts or ideas contained in the work that enjoys copyright protection. *Id*.; *see also Allen v. Academic Games League of Am.*, 89 F.3d 614, 617 (9th Cir. 1996). "Thus, ideas contained in a copyrighted work may be freely used so long as the copyrighted expression is not wholly appropriated." *Allen*, 89 F.3d at 617.

The Court finds that the 2005 Manual is entitled to copyright protection. Plaintiffs have a valid copyright for the 2005 Manual, which creates a presumption of validity and originality. *Ets-Hokin*, 225 F.3d at 1075. Defendants have not demonstrated the invalidity of that copyright. While the 2005 Manual may contain some general business ideas, Mills's expression and organization of those ideas possesses sufficient originality to warrant copyright protection. Mills spent many hours organizing and drafting the 2001 Manual and the revisions for the 2005 Manual. He made choices regarding which concepts and ideas to include in the Manuals and how to express those concepts.

The Court finds as a matter of law that the 2005 Manual is entitled to copyright protection. The Court therefore must determine whether Plaintiffs have demonstrated as a matter of law that Defendants copied elements of the 2005 Manual that are original, the second element of a copyright infringement claim.

Because direct evidence of copying is not available in most cases, plaintiffs may prove copying by showing that the defendant had access to the subject work and that the two works are "substantially similar in idea and in expression of the idea." *Smith*, 84 F.3d at 1218 (internal citations omitted). Courts use a two-part test to determine whether two works are substantially similar. *Id*. The extrinsic test addresses whether two works share a similarity of ideas and expression based on external, objective criteria. *Id*. If the plaintiff satisfies the extrinsic test, then the subjective, intrinsic test examines whether a reasonable, ordinary observer would find a substantial similarity of expression of the shared idea. *Id*. "For

- 5 -

1  summary judgment, only the extrinsic test is relevant. If plaintiff satisfies the extrinsic test,
2  the intrinsic test's subjective inquiry must be left to the jury and summary judgment must be
3  denied." *Id*.

4  At the extrinsic stage of the inquiry, courts require a lower standard of proof on
5  similarity if the defendant had a high degree of access to the subject work. *Id*. Because
6  Plaintiffs gave Kaufman a copy of the 2005 Manual, the Court requires a lower degree of
7  proof when applying the extrinsic test. An objective review of the 2005 Manual and the CFO
8  Wise Manuals reveals a similarity of ideas. In fact, in some instances, especially in the 2008
9  Manual, Defendants used the exact same phrase or expression as the 2005 Manual.

10 Defendants argue that even if the CFO Wise Manuals contain some of the same ideas
11 and expressions as the 2005 Manual, the *scènes á faire* doctrine precludes summary
12 judgment. Although Defendants argue the *scènes á faire* doctrine prevents the 2005 Manual
13 from enjoying copyright protection, that doctrine is actually more appropriately a defense to
14 infringement, the second prong of a copyright claim. *Ets-Hokin*, 225 F.3d at 1082 (stating,
15 when discussing the *scènes á faire* doctrine and the merger doctrine, "Although there is some
16 disagreement among courts as to whether these two doctrines figure into the issue of
17 copyrightability or are more properly defenses to infringement, we hold that they are
18 defenses to infringement.")(internal citations omitted).

19 "Under the *scenes a faire* doctrine, when certain commonplace expressions are
20 indispensable and naturally associated with the treatment of a given idea, those expressions
21 are treated like ideas and therefore not protected by copyright." *Swirsky v. Carey*, 376 F.3d
22 841, 850 (9th Cir. 2004). The rationale behind the *scènes á faire* doctrine is that there should
23 not be a monopoly on the underlying unprotectable idea. *Ets-Hokin*, 225 F.3d at 1082.
24 Defendants argue that they could not infringe the 2005 Manual because it contains only
25 common business concepts that follow naturally in a business training manual.

26 The 2005 Manual may contain some common business practices or ideas, but, to the
27 extent it does, there are many different ways to express and organize those business practices
28 and ideas. Mills made original decisions regarding how to arrange and present those ideas.

1  The particular form of expression for the ideas that Mills chose for the 2005 Manual does not
2  naturally flow from the business concepts contained therein. Nor does the fact that Mills
3  may have used some commonplace business terms in the 2005 Manual mean that the *scènes*
4  *á faire* doctrine covers the entire eighty-two page manual. Defendants have not shown that
5  Kaufman merely used the same commonplace business terms in the CFO Wise Manuals as
6  used in the 2005 Manual.

7  The Court finds Plaintiffs have demonstrated that the CFO Wise Manuals and the
8  2005 Manual have similarities sufficient to satisfy the extrinsic test, especially given the
9  lower burden because of Kaufman's access to the 2005 Manual. The Court therefore finds
10 as a matter of law that Plaintiffs have proven the Kaufman 2008 and 2009 Manuals share a
11 similarity of ideas and expression with the 2005 Manual. Nor does the Court agree that the
12 *scènes á faire* doctrine saves Defendants from allegations of copying. Nonetheless, the Court
13 does not find as a matter of law that Plaintiffs have satisfied the intrinsic test.

14 At the intrinsic stage, the Court must decide if reasonable minds could differ regarding
15 whether the CFO Wise Manuals captured the total concept and feel of the 2005 Manual. As
16 stated earlier, granting summary judgment on the substantial similarity issue in copyright
17 cases is not highly favored. *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 900 (9th Cir. 1987).

18 The intrinsic test is "uniquely situated for determination by the *trier of fact*." *Shaw*
19 *v. Lindheim*, 919 F.2d 1353, 1358 (9th Cir. 1990)(emphasis in original)(internal citations
20 omitted). The subjective assessment of two different works is a task no more suitable for a
21 judge than a jury. *Id*. at 1360. A subjective assessment is not a legal conclusion; rather it is
22 by nature an individualized process that will provoke a varied response in each trier of fact.
23 *Id*. "It is not the district court's role, in ruling on a motion for a summary judgment, to limit
24 the interpretive judgment of each work to that produced by its own experience." *Id*. Because
25 a subjective "assessment may not properly be made as a matter of law, it is for the trier of
26 fact to determine whether the intrinsic test is satisfied." *Id*. at 1361.

27 Granting summary judgment on substantial similarity may be appropriate in the rare
28 case where no reasonable juror could find that the defendant had not captured the total

1  concept and feel of the copyrighted work, but the Court determines that summary judgment
2  is not proper here.  The Court will not substitute its overall impression of the CFO Wise
3  Manuals for that of the individual fact finders.  The Court therefore will deny Plaintiffs'
4  Motion for Partial Summary Judgment.

*Defendants' Motion to Strike*

6  Defendants have filed a Motion to Strike Exhibits from the Affidavit of Jerry Mills
7  in Support of Plaintiffs' Motion for Partial Summary Judgment (Doc. 112).  Plaintiffs
8  correctly point out that the local rules do not allow such a separate Motion.  Local Rule of
9  Civil Procedure 7.2 (m)(2) provides in pertinent part:

> *Objections to Admission of Evidence on Written Motions.*  An objection to the admission of evidence offered in support of or opposition to a motion must be presented in the objecting party's responsive or reply memorandum (or, if the underlying motions is a motion for summary judgment, in the party's response to another party's separate statement of material facts) and not in a separate motion to strike or other separate filing. . . .

14  The Court therefore will deny the Motion to Strike.

15  As an aside, on exhibits, the Court will not consider courtesy copies of documents that
16  are submitted to the Court and labeled as "under seal," but not filed into the record.  The
17  parties may reach an agreement regarding the confidential treatment of a document between
18  themselves.  But if a party wants to file something under seal, the party must file a motion
19  to seal and follow the appropriate procedures.  Further, before the Court will seal a
20  document, a party must make the appropriate showing under *Kamakana v. City and County*
21  *of Honolulu*, 447 F.3d 1172 (9th Cir. 2006).

*Defendants' Motion for Partial Summary Judgment*

23  Defendants have filed a Motion for Partial Summary Judgment on the availability of
24  statutory damages and attorneys' fees under the Copyright Act.  Under 17 U.S.C. §§504(a)
25  & (c), a copyright owner may choose to recover statutory damages instead of actual damages
26  and additional profits.  Section 505 allows courts to award reasonable attorneys' fees to the
27  prevailing party in a copyright action.  17 U.S.C. §505.  Defendants argue that Plaintiffs

- 8 -

cannot recover statutory damages under §504 or attorneys' fees under §505 because any infringement of the 2005 Manual commenced before Plaintiffs registered the copyright.

The Copyright Act provides in pertinent part:

> In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for --
>
> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. §412. Thus, to recover statutory damages or attorneys' fees under the Copyright Act, the copyright owner must have registered the work prior to commencement of the infringement, unless the registration occurred within three months after the first publication of the work.

To resolve Defendants' Motion the Court must determine when the alleged infringement commenced and whether the CFO Wise 2009 Manual would constitute a continuing infringement or a new, separate infringement. The Ninth Circuit Court of Appeals analyzed these same issues in *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696 (9th Cir. 2008).

The district court in *Poof* awarded the copyright owner, Andrew, statutory damages because the defendant, Poof, had distributed garments with an infringing hang-tag after the copyright's June 15, 2005 registration date. 528 F.3d at 699. To make that award, the district court impliedly determined that the post-registration shipments of the infringing garments were separate and distinct from the pre-registration infringements. *Id*. The Ninth

- 9 -

1 Circuit Court of Appeals reviewed whether the post-registration infringements actually
2 "commenced," for purposes of 17 U.S.C. §412, before registration. *Id.*

3 Andrew first published the hang-tag at issue on August 11, 2003, but did not register
4 the copyright until June 15, 2005. *Id.* Poof's initial act of infringement occurred on May 9,
5 2005, when Andrew obtained a Poof garment bearing an infringing hang-tag. *Id.* at 700. So,
6 Andrew registered the copyright more than three months after its first publication, and Poof's
7 infringement first occurred before the effective date of registration. *Id.*

8 In deciding whether §412 bars an award of statutory damages for post-registration
9 infringements if the initial act of infringement occurs before the effective copyright
10 registration date, the court of appeals consulted the text of §412 and the purposes behind that
11 section. With respect to the text, the court of appeals agreed with a court that had concluded:

> Each separate act of infringement is, of course, an "infringement" within the meaning of the statute, and in a literal sense perhaps such an act might be said to have "commenced" (and ended) on the day of its perpetration[,] . . . it would be peculiar if not inaccurate to use the word "commenced" to describe a single act. That verb generally presupposes as a subject some kind of activity that begins at one time and continues or reoccurs thereafter.

*Id.* (quoting *Sing v. Famous Overseas, Inc.*, 680 F.Supp. 533, 535 (E.D.N.Y. 1988)). The court of appeals further recognized the two fundamental purposes behind §412: "First, by denying an award of statutory damages and attorney's fees where infringement takes place before registration, Congress sought to provide copyright owners with an incentive to register their copyrights promptly. Second, §412 encourages potential infringers to check the Copyright Office's database." *Poof*, 528 F.3d at 700 (internal citations omitted).

The court of appeals concluded that allowing statutory damages and attorneys' fees when an infringing act occurs before registration and then reoccurs thereafter "clearly would defeat the dual incentives of §412." *Id.* The court of appeals agreed with every other court that had considered the issue and held that infringement "commences" for §412 purposes when "the first act in a series of acts constituting infringement occurs." *Id.* at 700-01 (internal quotations omitted). The court of appeals therefore held that "*the first act of*

- 10 -

1  *infringement* in a series of ongoing infringements of the same kind marks the commencement
2  of one continuing infringement under §412.  This interpretation, we believe, furthers
3  Congress' intent to promote the early registration of copyrights" *Id.* at 701 (emphasis in the
4  original).

5        Applying that interpretation of §412 to the facts before it, the court of appeals found
6  no legally significant difference between Poof's pre- and post-registration distributions of
7  the infringing hang-tags.  *Id.*  The court of appeals therefore found that Poof's post-
8  registration distributions were an ongoing continuation of its initial infringement and the
9  infringing activity thus commenced before the effective date of registration.  *Id.* ("The mere
10 fact that the hang-tag was attached to new garments made and distributed after June 15 does
11 not transform those distributions into many separate and distinct infringements.") Because
12 the infringement commenced before registration, the court of appeals held that 17 U.S.C.
13 §412 prohibited Andrew from recovering statutory damages and attorneys' fees under 17
14 U.S.C. §§504 & 505.  *Id.* at 701-02.

15       Kaufman became a partner of B2B CFO Partners on March 24, 2006.  By Plaintiffs'
16 own admission, B2B CFO Partners published the 2005 Manual "many months before
17 Kaufman ever joined B2B CFO."  (Doc. 119, p.9.)  Plaintiffs did not register the 2005
18 Manual's copyright until October 13, 2009.  Obviously, Plaintiffs did not register the
19 copyright on the 2005 Manual within three months of its first publication.  In fact, several
20 years elapsed between the 2005 Manual's first publication and its registration.

21       According to Mills, he first began to have concerns about Kaufman's competing
22 business when he spoke with Mr. and Mrs. Halverson on the phone on April 23, 2009, when
23 they told him that Kaufman informed them that Kaufman had a copy of B2B CFO Partner's
24 training manual. (Plaintiffs' SOF, Doc. 100, ¶15.)  After that conversation, Mills continued
25 to investigate Kaufman's possible copying of Plaintiffs' training manuals.  Another person,
26 Mr. Lundbom, informed Mills by phone on July 27, 2009 that Kaufman was representing that
27 CFO Wise had copies of B2B CFO Partner's training manual.  (Id. ¶16.)

28

Mills first saw an allegedly infringing CFO Wise Manual at a meeting with a Mr. Agee on September 17, 2009. Mills claims that he did not receive a copy of that version on that date, but he did see it. (Id. ¶17.) Kaufman claims that he stopped using both the CFO Wise 2008 and 2009 Manuals in July of 2009. (Doc. 114-3 ¶10.) Plaintiffs do not present any evidence that Kaufman first distributed the 2008 CFO Wise Manual after Plaintiffs registered the copyright.

In fact, Plaintiffs do not contend that the 2005 Manual's registration predates Kaufman's initial distribution of the 2008 CFO Wise Manual.[1] They argue instead that there is a question of fact as to when Kaufman first distributed the 2009 CFO Wise Manual, which commenced a separate series of infringing acts. Plaintiffs claim that this case involves two separate series of infringing acts: "(1) Defendants['] distribution of the Kaufman 2008 Manual, and (2) Defendants['] distribution of the Kaufman 2009 Manual." (Doc. 119, p.11.) The Court disagrees.

Like the court of appeals in *Poof*, the Court can find no legally significant difference between Kaufman's distribution of the CFO Wise 2008 Manual and his distribution of the CFO Wise 2009 Manual. Although the CFO Wise 2008 Manual may differ somewhat from the 2009 version, the same person, Kaufman, allegedly copied the same copyrighted work, the 2005 Manual, when he drafted both CFO Wise Manuals. The 2009 CFO Wise Manual constituted the same kind of alleged copying as the 2008 CFO Wise Manual. Kaufman's alleged infringement therefore commenced for §412 purposes when he distributed the 2008 CFO Wise Manual, which was the "*first act of infringement* in a series of ongoing infringements of the same kind" by the same person. *Poof*, 528 F.3d at 701; *see also Mason v. Montgomery Data*, 967 F.2d 135, 144 (5th Cir. 1992)(holding that a "plaintiff may not recover an award of statutory damages and attorney's fees for infringements that commenced

---

[1] It would be odd indeed for Plaintiffs to claim that Kaufman's first distribution of the 2008 CFO Wise Manual came after the copyright registration, which occurred in October of *2009,* when they themselves refer to the manual as the *2008* Manual.

after registration if the *same defendant* commenced an infringement of the *same work* prior to registration.")(emphasis added).

Plaintiffs cite *Kwan v. Schlein*, 246 F.R.D. 447 (S.D.N.Y.) in support of their position that the 2009 revised edition of the CFO Wise Manual began a separate series of infringing acts. The *Kwan* court did not hold that the post-registration publication of a revised edition of an allegedly infringing book, which was initially published prior to registration, constituted a separate infringement for §412 purposes. It instead held that a second amended complaint alleging a copyright claim that included a claim for statutory damages was not futile because it was "*arguable* that publication of each edition marks the commencement of [a new] infringement for purposes of §412 . . . ." *Id.* at 453. The *Kwan* court therefore did not reach a conclusion on the issue, it just found that the plaintiff could argue the new edition marked a new and separate infringement. Even if the *Kwan* court had decided the issue, a Southern District of New York opinion does not bind this Court, especially given the Ninth Circuit precedent on the issue.

The Court notes that the decisions of many other courts that have actually reached the "commencement" issue support the Court's conclusion here. *See, e.g., New Name, Inc. v. The Walt Disney Co.*, 2008 WL 5587487, at *5 (C.D. Cal. July 23, 2008)(holding that the post-registration addition of an emblem to a second "edition" of an allegedly infringing t-shirt did not constitute a new and separate infringement for §412 purposes); *Sartor v. Walters*, 2006 WL 3497856, at *4 (W.D. La. December 5, 2006)(holding that post-registration publication of new issues of a magazine using the same allegedly infringing layout did not commence a new and separate infringement under §412); *Dyer v. Napier*, 2006 WL 680551, at *4 (D.Ariz. March 16, 2006)(holding that post-registration customizing of an allegedly infringing sculpture by changing its size, surface texture, and by adding different sized pedestals did not commence a new infringement under §412).

The Court further finds that its decision advances the purposes behind §412. By denying an award of attorneys' fees if infringement occurs prior to registration, Congress intended to provide copyright owners with an incentive to register their copyrights promptly.

1  *Poof*, 528 F.3d at 700 (citing H.R.Rep. No. 94-1476, at 158 (1976), *as reprinted in* 1976
2  U.S.C.C.A.N. 5659, 5774).  Indeed, awarding statutory damages to Miller, who waited
3  several years to register his copyright, would not comport with the incentive structure of
4  §412. *Id*. at 701.

5  Because the Court finds as a matter of law that Kaufman's distribution of the 2009
6  CFO Wise Manual did not start a new and separate series of infringing acts, any alleged
7  infringement commenced for §412 purposes with Kaufman's pre-registration distribution of
8  the 2008 CFO Wise Manual.  Consequently, Plaintiffs cannot recover statutory damages or
9  attorneys' fees under the Copyright Act.  The Court therefore will grant Defendants' Motion
10 for Partial Summary Judgment.

11 Accordingly,

12 **IT IS HEREBY ORDERED** DENYING Plaintiffs' Motion for Partial Summary
13 Judgment (Doc. 99).

14 **IT IS FURTHER ORDERED** GRANTING Defendants' Cross Motion for Partial
15 Summary Judgment on Damages (Doc. 113).  Plaintiffs cannot recover statutory damages
16 under 17 U.S.C. §504 or costs and attorneys' fees under 17 U.S.C. §505.

17 **IT IS FURTHER ORDERED** DENYING Defendants' Motion to Strike Exhibits
18 from Affidavit of Jerry Mills (Doc. 112).

19 DATED this 8th day of February, 2011.

James A. Teilborg
United States District Judge

- 14 -