**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| B2B CFO Partners, LLC; B2B CFO, LLC; Jerry Mills; Christine Mills,<br><br>Plaintiffs,<br><br>vs.<br><br>Kenneth A. Kaufman; Kaufman Enterprise Solutions, LLC; CFO Wise, Inc.; The CFO Wise Promise, LLC,<br><br>Defendants. | No. CV 09-2158-PHX-JAT<br><br>**ORDER** |

Currently pending before the Court are Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 155) and Plaintiffs' Motion to Extend Discovery Deadline and Expert Disclosure Deadline (Doc. 158). The Court now rules on both Motions.

## **BACKGROUND**

This case arises from allegations against Defendant Kenneth Kaufman and various corporate entities of which he is a member. Kaufman is allegedly a former partner of Plaintiff B2B CFO Partners, LLC. After leaving B2B CFO Partners, Kaufman allegedly started or continued to operate a number of competing businesses. B2B CFO Partners and Plaintiffs Jerry and Christine Mills now accuse Kaufman and others of trade secret misappropriation, copyright infringement, and violations of the Federal RICO and Lanham Acts.

As indicated above, Plaintiffs moved to amend the scheduling order, which would be

the fourth amendment to the January 4, 2010 Order.  The expert disclosure deadline passed on August 30, 2010; the third discovery deadline was May 15, 2011; and the third deadline to amend the Complaint passed on June 29, 2010.  Plaintiffs have already amended the Complaint once.  Defendants oppose both Motions before the Court.

## **LEGAL STANDARD**

Generally, Federal Rule of Civil Procedure 15(a) governs a motion to amend pleadings to add claims or parties.  However, Rule 16(b) also applies in the present case, because Plaintiffs requested leave to amend after the Rule 16 Scheduling Order deadline expired. Rule 16(b) also governs Plaintiffs' request to extend the deadlines for discovery and expert disclosure.  Therefore, it is appropriate to discuss both Rules 15 and 16.

Rule 15(a) provides in pertinent part:

> A party may amend its pleading once as a matter of course within: 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.  In all other cases, *a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires*.

Fed. R. Civ. P. 15(a) (emphasis added).  Although the decision whether to grant or deny a motion to amend is within the trial court's discretion, "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "In exercising its discretion with regard to the amendment of pleadings, 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'. . . Thus, 'Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.'" *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citations omitted). "Generally, this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp.*, 170 F.3d 877, 880 (9th Cir. 1999) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)).

However, the liberal policy in favor of amendments is subject to limitations.  After the defendant files a responsive pleading, leave to amend may be denied if the "amendment

1  would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue
2  delay." *Madeja v. Olympic Packers, L.L.C.*, 310 F.3d 628, 636 (9th Cir. 2002) (quoting
3  *Yakama Indian Nation v. Wash. Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999)).
4  "The party opposing amendment bears the burden of showing prejudice," futility, or one of
5  the other permissible reasons for denying a motion to amend. *DCD Programs,* 833 F.2d at
6  187; *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988) (stating that
7  leave to amend should be freely given unless opposing party makes "an affirmative showing
8  of either prejudice or bad faith").

9  Prejudice can result where a defendant would be forced to participate in additional
10 discovery. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). Extending
11 discovery can also create undue delay. *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d
12 1132, 1139 (9th Cir. 1998). Regarding futility, "[a] district court does not err in denying
13 leave to amend where the amendment would be futile or . . . subject to dismissal." *Saul v.
14 United States*, 928 F.2d 829, 843 (9th Cir. 1991) (citation omitted); *see also Miller v. Rykoff-
15 Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied
16 if it appears to be futile or legally insufficient."). Similarly, a motion for leave to amend is
17 futile if it can be defeated on a motion for summary judgment. *Gabrielson v. Montgomery
18 Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986). "However, a proposed amendment is futile
19 only if no set of facts can be proved under the amendment to the pleadings that would
20 constitute a valid and sufficient claim or defense." *Miller*, 845 F.2d at 214.

21 Rule 16, on the other hand, applies to pretrial conferences and scheduling orders.
22 Rule 16(b) states that the mandated scheduling order "must limit the time to join other
23 parties, amend the pleadings, complete discovery, and file motions. . . . A schedule may be
24 modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b).

25 "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the
26 party seeking to interpose an amendment and the prejudice to the opposing party, Rule
27 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the
28 amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Generally, to meet its burden under Rule 16(b)'s "good cause" standard, the movant should show:

> (1) that [the movant] was diligent in assisting the [c]ourt in creating a workable Rule 16 order; (2) that [the movant's] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [the movant's] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [the movant] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [the movant] could not comply with the order.

*Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999) (citations omitted). The Ninth Circuit has also recognized that, "[t]he district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson*, 975 F.2d at 609 (quoting Fed. R. Civ. P. 16 advisory committee's note). However, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification . . . . If that party was not diligent, the inquiry should end." *Id.*

With respect to the interplay between Rules 16 and 15, "[a]s the Ninth Circuit explained in *Johnson* . . . , once the district court has filed a pretrial scheduling order pursuant to Rule 16 . . . , a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a)." *Jackson*, 186 F.R.D. at 607; *Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1232 (E.D. Cal. 1996); *see Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994); *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (finding that a party seeking to amend a pleading after the scheduling order date must first show "good cause" for not amending the complaint sooner, and if "good cause" is established, the party must demonstrate that the amendment is proper under Rule 15). "If [the court] considered only Rule 15(a) without regard to Rule 16(b), [it] would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules

1 of Civil Procedure." *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998).
2 Accordingly, the Court will first evaluate Plaintiffs' Motion for Leave to File Second
3 Amended Complaint under Rule 16(b), and then, if necessary, under Rule 15(a). Regarding
4 the Motion to Extend Discovery Deadline and Expert Disclosure Deadline, the Court will
5 utilize only Rule 16(b).

## **AMEND COMPLAINT WITH ADDITIONAL FACTUAL SUPPORT:**
## **TRADE SECRETS CLAIM**

Plaintiffs have moved to amend the first Amended Complaint to provide additional factual support for their claim regarding trade secret misappropriation, specifically secrets from Plaintiff Jerry Mills's verbal presentation. Plaintiffs argue that they could not have known about or pleaded the new allegations until after they deposed Defendant Kaufman on January 20, 2011 and received Kaufman's copy of Plaintiffs' training manual shortly before filing this Motion.

Plaintiff Jerry Mills conducted the April 3, 2006 presentation, and so the substance of what was presented to Kaufman should come as no surprise to Jerry Mills or to Plaintiffs' counsel. Indeed, Jerry Mills's affidavit dated May 25, 2010 reads:

> The 2005 Manual does not contain all of my trade secrets, however. Much of what I teach the partners of B2B CFO Partners about creating and operating a successful CFO business within B2B CFO Partners I save for my verbal presentations during the training sessions I provide to every person who signs a partnership agreement and attends a formal training session. In that verbal training, I present B2B CFO Partners' true secrets for succeeding. I consider my verbal presentations during training to be bona fide trade secrets, inasmuch as the verbal information I provide is valuable to the creation and operation of a successful CFO business, derives [sic] significant economic value by not being known outside B2B CFO Partners. The information gives partners of B2B CFO Partners a significant advantage in the marketplace.

(Doc. 82 at 6).

First, as evidenced by the above quotation, Plaintiffs have been aware of the presentations' importance for over a year. Second, Plaintiffs have been aware that Kaufman attended one of the presentations since before this suit began. Third, as discussed below, Plaintiffs have had both of the items evidencing the alleged theft for over a year. Plaintiffs assert that Kaufman stole information from the training manual Jerry Mills gave to Kaufman

during his presentation. Plaintiffs first received a scanned copy of said training manual on May 6, 2010, complete with handwritten notes. They first received a copy of the training manuals produced by Kaufman's company—which allegedly utilize the trade secrets in question—on January 19, 2010.

Although Plaintiffs now allege that they needed the original hard copy of their manual to verify that it was Kaufman's handwriting, this argument is unavailing. In Jerry Mills's sworn affidavit filed with the Court over a year ago on May 25, 2010, he writes, "From the hand-written notes on that document, it appears to be Kaufman's personal copy of the B2B CFO 2005 Manual. . . . In a letter dated May 20, 2010, counsel for Defendants confirmed that this document had been in Kaufman's possession" (Doc. 82 at 11). If further investigation was truly necessary, the Court fails to understand—and Plaintiffs fail to adequately explain—why Plaintiffs did not follow up for so long.

Plaintiffs filed their first Amended Complaint on July 23, 2010. While the original Complaint was broad in its treatment of the trade secrets claim, the first Amended Complaint narrowed and focused the claim to the "Point System." Plaintiffs expressly withdrew any allegations regarding "any other trade secrets that Defendants may have misappropriated . . ." (Doc. 159, Exhibit B).

Plaintiffs had a seemingly complete picture of what they now allege long before Kaufman's deposition, and yet they limited their trade secrets claim. Plaintiffs must have had a tactical reason for amending their Complaint as they did on July 23, 2010, even when they had this information. As such, there is no good cause to amend the Amended Complaint at this late stage in the litigation. *See Long v. Ford Motor Co.*, No. CV 07-2206-PHX-JAT, 2009 WL 903404, at *3 (D.Ariz. Apr. 1, 2009) (citing *Acri v. Int'l Ass'n of Machinists and Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir.1986) (even under the liberal Rule 15 standard the court found no error in denying the motion to amend complaint where the delay was the result of a tactical decision)). Plaintiffs were not diligent in their efforts to comply with the Rule 16 Order or diligent in seeking amendment of it. The Rule 16(b) standard is not satisfied, and thus the Court need not reach the Rule 15(a) standard. Accordingly,

Plaintiffs' Motion is denied as to amending the trade secrets claim.

## **AMEND COMPLAINT WITH ADDITIONAL PARTIES**

Plaintiffs have moved to add five additional defendants. In support of their Motion, Plaintiffs offer only the fact that Defendants failed to inform them of the dissolution of Defendant The CFO Wise Promise, LLC ("Promise"). However, they have not adequately explained why this fact has any substantive bearing on the outcome of this case or gives good cause to amend. It does not change the liability of Promise's members and thus does not explain why they were not added to the Complaint months ago.

The dissolution of Promise, a limited liability company organized under Utah law, does not change its members' liability in this suit. The dissolution does not "abate or suspend a proceeding pending . . . against the company on the effective date of dissolution." Utah Code Ann. § 48-2c-1203(2)(f) (West 2011). And the claim "may be enforced . . . against one or more members of the dissolved company to the extent the assets have been distributed to the members in winding up." Utah Code Ann. § 48-2c-1307(1) (West 2011). So Promise's dissolution should not affect these proceedings in any material way. If judgment is entered against Promise, and Promise fails to pay in full, Plaintiffs may move to enforce the judgment against its members who received payment while the company was winding up. There is no reason to delay this proceeding by adding five additional parties—one of whom is a yet-unknown Jane Doe. Any new parties would most likely request discovery on new issues and additional discovery on the old issues. The proceedings could effectively start over from the beginning. And finally, the individual members need not be joined in order to provide adequate notice of the proceedings, because this suit began several months before Promise's dissolution.

To the extent that Plaintiffs are alleging that Promise's members are individually liable in addition to the company itself, Plaintiffs have not shown good cause as to why the members were not included in the suit from its inception, or at least before the Court's deadline to amend the complaint. Plaintiffs have not alleged that they lacked knowledge of Promise's membership prior to the deadline. They have not alleged that any new facts came

1  to light after the deadline that would support claims of individual liability against its
2  members. If Plaintiffs desire to "pierce the corporate veil," they have not explained why this
3  was not pleaded before the deadline.

4  The only support Plaintiffs offer for arguing diligence in amending the first Amended
5  Complaint at this late juncture is that Defendants concealed Promise's dissolution from them.
6  But this alleged fact does not change how its members would be liable *through* the company,
7  nor does it explain why any liability *apart from* the company was not pleaded long ago.
8  Because the dissolution of Promise does not change how or if its members are liable,
9  Plaintiffs were not diligent in their efforts to comply with the Rule 16 Order or in seeking
10 amendment of it.

11 The Court finds that Plaintiffs do not have good cause to amend the first Amended
12 Complaint to add new parties at this time. Because the Rule 16(b) standard is not satisfied,
13 the Court does not reach the Rule 15(a) analysis. Moreover, even if the Court were to
14 consider the Motion to Amend under Rule 15(a), Plaintiffs would be unlikely to overcome
15 Defendants' arguments for delay and prejudice for the same reason discussed above—that
16 discovery would likely have to begin anew.

## AMEND COMPLAINT WITH AN ADDITIONAL CLAIM: BREACH OF FIDUCIARY DUTY

19 Plaintiffs seek to add an additional claim against Defendant Kaufman regarding an
20 alleged breach of fiduciary duty. They argue for the addition of this claim based on two facts
21 learned during Kaufman's deposition. First, Plaintiffs were apparently unaware that
22 Kaufman was allegedly operating a competing CFO business while employed at B2B CFO
23 Partners. Although they knew that his business existed before, during, and after his tenure
24 at B2B CFO Partners, and that it is a competitor now, they were unaware that his business
25 was a competitor at the relevant time. Second, Plaintiffs were unaware that Kaufman
26 allegedly hired Bill Baker for his own business after Jerry Mills allegedly directed Kaufman
27 to hire Baker for B2B CFO Partners.

28 Plaintiffs deposed Kaufman almost four months before the discovery deadline. The

1 Court finds that Plaintiffs did not discover these two facts until that deposition. Further, Defendants have not pointed to any discovery that would have caused Plaintiffs to learn these facts sooner. Plaintiffs have shown they were diligent in discovering them.

Specifically, considering the factors from *Jackson*, the Court finds that Plaintiffs were diligent in assisting the Court in creating a workable Rule 16 Order. Second, Plaintiffs' noncompliance with the Rule 16 deadline occurred because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference. Finally, it is a close call on whether Plaintiffs were diligent in moving to amend the Amended Complaint two and a half months after the deposition. However, given that Plaintiffs needed to transcribe and attach the deposition, the Court finds that Plaintiffs were reasonably diligent in seeking amendment once it became apparent that they could not comply with the Order. Accordingly, the Rule 16(b) standard for good cause is met.

The Court now turns to the Rule 15(a) inquiry. For this analysis, the burden shifts to Defendants to show why the Court should deny leave to amend. *See DCD Programs v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). The Motion is to be liberally granted when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Defendants have argued that the Motion should be denied because the amendment would be futile, cause undue delay, and prejudice them.

Futility is shown if no set of facts can be proved that would support the claim for relief. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Defendants argue that the claim would be futile, because the actual partner with B2B CFO Partners was not Kaufman, but rather his business entity, Kaufman Enterprise Solutions. Thus Kaufman owed no fiduciary duty to B2B CFO Partners, and the claim must necessarily fail. But Plaintiffs have contested this assertion with evidence that Kaufman was indeed a partner (Doc. 165-1, Exhibit O). On this record, the Court cannot conclude that the claim would be futile.

Defendants argue that allowing the claim would cause delay and prejudice them. The

discovery deadline has since passed, but at the time that this Motion was filed, there were forty days left. Allowing the claim and reopening discovery could cause some additional delay, but this delay and any prejudice can be managed by limiting the extension of discovery, in terms of both scope and time. *See Washington v. Brown*, No. CIV S-06-1994 WBS DAD P., 2009 WL 160311, at *21 (E.D. Cal. Jan. 21, 2009). Although it may require the parties to conduct additional discovery, it would not render any of the previous discovery or expenditures superfluous. First, Plaintiffs filed their Motion before the discovery deadline; second, the Court will minimize any delay with a short discovery extension; and third, the Court will remove any prejudice by reducing the scope of discovery. Consequently, the Court fails to find either prejudice or undue delay.

The Rule 16(b) and 15(a) standards are both satisfied. Accordingly, the Court will grant Plaintiffs' Motion for Leave to File Second Amended Complaint as to this additional claim and this claim only.

## **EXTENSION OF DISCOVERY DEADLINE**

Plaintiffs filed their Motion to Extend Discovery Deadline and Expert Disclosure Deadline on April 19, 2011. First, Plaintiffs claim that new information came to light that necessitates extending the discovery deadline. Second, Plaintiffs argue that the anticipated filing of their Second Amended Complaint would require more discovery. Third, Defendants allegedly refused to produce complete financial documents for so long that Plaintiffs require additional time for discovery.

First, the fact that Plaintiffs learned new information during Kaufman's deposition is not per se justification for extending discovery. Indeed, the purpose of discovery is learning information. *See Taylor v. Illinois*, 484 U.S. 400, 430 (1988) ("the purpose [of] discovery is . . . the quest for truth"). Plaintiffs have not explained why they waited until fifteen months into the litigation to depose Kaufman, the case's central player and sole individual Defendant. Additionally, Plaintiffs assert that Defendants actively concealed the information until the deposition, but fail to offer evidence of deliberate concealment. No evidence has been put forth of interrogatories or other discovery requests that should have revealed the

information, but were evaded by Defendants.[1]

Most of Plaintiffs' arguments for extending the discovery deadline are mooted by the Court's decision to deny Plaintiffs' Motion to Amend on two of the three issues. Regarding the new breach of fiduciary duty claim, however, the parties will require additional time for discovery. Plaintiffs bear some of the blame in delaying to bring this claim, as they did not depose Kaufman until January 20, 2011, and then did not move to amend the first Amended Complaint based on their new knowledge until April 5, 2011. Although the discovery deadline has since passed, there were forty days remaining when Plaintiffs filed their Motion to Amend. Accordingly, the Court will grant a forty day extension for discovery. But discovery during this additional time must be limited to only the breach of fiduciary duty claim.

Plaintiffs argue that Defendants' past and anticipated noncompliance with Plaintiffs' discovery requests requires that Plaintiffs be granted the extension. First, both parties should be reminded of the Court's scheduling order, which reads:

> [T]he parties shall **complete** all discovery by the deadline set forth in this Order (**complete** being defined as including the time to propound discovery, the time to answer all propounded discovery, the time for the Court to resolve all discovery disputes, and the time to complete any final discovery necessitated by the Court's ruling on any discovery disputes). Thus, "last minute" or "eleventh hour" discovery which results in insufficient time to undertake additional discovery and which requires an extension of the discovery deadline will be met with disfavor, and may result in denial on an

---

[1] Plaintiffs argue that their First Set of Requests for Production of Documents to Promise (Doc. 165-1, Exhibit R) should have revealed its dissolution. Plaintiffs requested production of all annual reports, monthly income statements, monthly balance sheets, operating agreements, partnership agreements, membership agreements, bylaws, and other agreements relating to Promise. Plaintiffs sent the Requests on February 12, 2010, Defendants responded on May 7, and Promise was dissolved on June 1. Nonetheless, Plaintiffs assert that because the Requests were continuing, they required notice of the later dissolution. However, Plaintiffs expressly limited the Requests to "the relevant period only," which Plaintiffs defined as "the time period from January 1, 2005 until the time that [Defendants] comply with this Request" (Doc. 165-1, Exhibit R, at 7–8). Accordingly, although Defendants' obligation to produce relevant documents from that time period (January 1, 2005–May 7, 2010) is continuing, Plaintiffs did not request documents from before or after that period in their First Set of Requests.

1 | extension, exclusion of evidence, or the imposition of other sanctions.
2 | (Doc. 68 at 3 n.3).

Even if Defendants delayed as long and as deliberately as Plaintiffs claim, this does not explain why Plaintiffs waited until March 14, 2011 to bring it to the Court's attention—a full thirteen months after Plaintiffs' First Set of Requests for Production of Documents on Defendants. However, to the extent that Defendants have not complied with the Court's previous direction, the Court hereby orders that they do so. If Plaintiffs can establish that Defendants are not complying with the Court's compelled discovery, the Court will entertain a motion for sanctions or other remedies that Plaintiffs may seek at an appropriate time.

## **EXPERT DISCLOSURE DEADLINE**

Plaintiffs' expert disclosure deadline passed on August 30, 2010. Plaintiffs argue that they could not have procured a financial expert by the deadline, because Defendants delayed in disclosing their financial information. However, Plaintiffs did not bring the discovery dispute that allegedly caused their delay to the Court's attention until March 14, 2011—more than six months after the expert disclosure deadline. Plaintiffs did not inform the Court of the resultant difficulty (and alleged impossibility) of selecting an expert without the information until April 19, 2011. The expert deadline approached, came, and went, all without word from Plaintiffs. Regardless of whatever Defendants allegedly led Plaintiffs to believe while attempting to resolve the discovery dispute on their own, the fact remains that Plaintiffs delayed for more than 14 months—from February 12, 2010 until April 19, 2011. They have not shown good cause for their delay or shown due diligence in seeking an extension of the expert disclosure deadline.

However, if any party feels that an expert is needed for the new breach of fiduciary duty claim, then that party may move for an extension of the expert disclosure deadline for that issue and that issue only.

Based on the foregoing,

**IT IS ORDERED** GRANTING in part and DENYING in part Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 155). The Motion is granted as to Part B.

1 | The Motion is denied as to Parts A and C.

**IT IS FURTHER ORDERED** that Plaintiffs shall have nine days from the date of this Order to file the Second Amended Complaint, or until July 22, 2011.

**IT IS FURTHER ORDERED** GRANTING in part and DENYING in part Plaintiffs' Motion to Extend Discovery Deadline and Expert Disclosure Deadline (Doc. 158). The Motion is granted as to Part III. All parties shall have forty (40) days from the date of this Order, or until August 22, 2011, to complete discovery on the claim for breach of fiduciary duty. Each party is granted leave to file an additional dispositive motion on only the claim for breach of fiduciary duty. Any such dispositive motion is due by August 31, 2011. The Motion is denied as to all other parts.

DATED this 13th day of July, 2011.

_____
James A. Teilborg
United States District Judge