**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| B2B CFO Partners, LLC, B2B CFO, LLC,) Jerry Mills and Christine Mills, ) ) Plaintiff(s), ) ) v. ) ) Kenneth A. Kaufman, Kaufman Enterprise) Solutions, LLC, CFO Wise, Inc., The CFO) Wise Promise, LLC, ) ) Defendant(s). ) ) ) | CV-09-2158-PHX-JAT ) ) **ORDER** |

Pending before the Court are Defendants' Motion for Partial Summary Judgment on Plaintiffs' Trade Secret Claim (Doc. 169), Defendant Kaufman's Motion for Partial Summary Judgment on Plaintiffs' Claim for Breach of Fiduciary Duty (Doc. 199), Plaintiffs' Motion to Strike Defendant Kaufman's Opposition to Plaintiffs' Controverting Statement of Facts (Doc. 217), and Defendants' Motion to Exceed Page Limit (Doc. 220). Having reviewed the parties' briefs and heard oral argument, the Court issues the following Order:

## BACKGROUND

Plaintiffs claim that Plaintiff B2B CFO Partners, LLC ("B2B CFO Partners") is the largest and most successful CFO business in the United States. A company in the CFO business serves small to medium-sized business owners who need someone with financial expertise beyond that of an accountant or bookkeeper, but who cannot afford, or choose not

1  to hire, a permanent CFO.  CFO businesses recruit experienced CFOs to become partners or

2  members in the CFO business, then offer the member CFOs to small and medium-sized

3  companies on a part-time basis.

4  Defendant Kenneth Kaufman ("Kaufman"), either personally or through his company

5  Kaufman Enterprise Solutions, LLC ("KES"), joined B2B CFO/CIO, LLP ("B2B CFO"), the

6  predecessor entity to B2B CFO Partners, in March 2006.  On March 14, 2006, prior to

7  joining B2B CFO, Kaufman received from the company a partnership agreement, which

8  included a written description of B2B CFO's "Point System for Distribution" ("Point

9  System").  B2B CFO claims that the Point System is a trade secret and uses it as part of its

10  monetary distribution plan for its partners.  B2B CFO did not require Kaufman to sign a

11  confidentiality agreement before sending him the partnership agreement with the description

12  of the Point System; however, Plaintiff Jerry Mills, a managing partner of B2B CFO, sent

13  an accompanying cover letter that stated that the partnership agreement was confidential and

14  requested its return if Kaufman chose not to join B2B CFO.  On March 24, 2006, Kaufman

15  signed the partnership agreement, which contained its own confidentiality provision.

16  Kaufman continued to operate KES, which is also a CFO business, during his

17  affiliation with B2B CFO.  The parties dispute whether KES was operating in competition

18  with B2B CFO during that time.  Furthermore, in August 2006, Mills asked Kaufman to

19  recruit Bill Baker to join B2B CFO.  Though Kaufman complied with the request and

20  encouraged Baker to join B2B CFO, Baker ultimately opted not to join the partnership.

21  However, shortly thereafter, Kaufman hired Baker to do work for KES.

22  After Kaufman left B2B CFO in January 2007, he continued to operate his own CFO

23  business.  Plaintiffs claim that Kaufman has used their Point System in his own CFO

24  business and has thereby misappropriated their trade secret.  Plaintiffs also claim that

25  Kaufman was in a fiduciary relationship with B2B CFO during his affiliation with them, and

26  that, by operating a competing business and hiring Baker, Kaufman breached his fiduciary

27  duties.

28  Defendants have moved for summary judgment on Plaintiffs' trade secret claim, and

Defendant Kaufman has moved for summary judgment on Plaintiffs' breach of fiduciary duty claim.  The Court now rules on the Motions.

## PRELIMINARY MOTIONS AND ISSUES

*1.   Plaintiffs' Motion to Strike Defendant Kaufman's Opposition to Plaintiffs' Controverting Statement of Facts and Defendant Kaufman's Motion to Exceed Page Limit*

In response to Plaintiffs' Controverting Statement of Facts in Opposition to Defendant Kaufman's Motion for Partial Summary Judgment on Plaintiffs' Claim for Breach of Fiduciary Duty (Doc. 207), Defendant Kaufman filed with his reply an Opposition to Plaintiff's Controverting Statement of Facts, including an attached exhibit.  (Doc. 216). Plaintiffs have moved to strike Kaufman's Opposition, arguing that it violates Local Rule 56.1.   Kaufman has both provided a response in opposition to Plaintiffs' motion and alternatively moved for leave to file a new reply with an extended page limit so that he may fully discuss his objections to Plaintiffs' controverting statement of facts.  (Doc. 220).

Local Rule of Civil Procedure 56.1(a) requires the party moving for summary judgment to file a separate statement of facts with its motion.  The non-moving party must then file a statement, separate from its memorandum, that specifically responds to each of the moving party's statements of fact and that sets forth any additional facts that make summary judgment inappropriate. L.R.Civ. 56.1(b).  Local Rule 56.1 does not provide for a reply statement of facts or a response to the non-moving party's separate statement of facts.

The Local Rules do not contemplate attaching additional exhibits to replies in support of summary judgment[1] or filing a separate response to the non-moving party's statement of facts.  "This is consistent with the moving party's need to show no genuine issue of material facts exists and that there is no need for a trier of fact to weigh conflicting evidence,

---

[1]Local Rule of Civil Procedure 7.2(e) provides that a reply shall not exceed eleven pages, exclusive of attachments, perhaps raising an inference that the Rule contemplates the filing of attachments.  But Local Rule 7.2(e) is a general rule for all motions and memoranda and does not apply specifically to motions for summary judgment, which have different burdens of proof.

1   assuming the non-moving party's evidence is true." *EEOC v. TIN Inc.*, No. CV-06-1899-
2   PHX-NVW, 2008 WL 2323913, at *1 (D. Ariz. June 2, 2008), *rev'd on other grounds*, 349
3   Fed. App'x 190 (9th Cir. 2009).

4           Kaufman argues in his response to Plaintiffs' motion to strike that the Opposition and
5   attached exhibit he filed along with his reply was necessitated by the large size of Plaintiffs'
6   controverting statement of facts, which ran 51 pages and included 160 numbered paragraphs,
7   121 more paragraphs than Kaufman included in his separate statement of facts. Specifically,
8   Kaufman states that "it would be impossible for Defendants to respond to the legal
9   arguments, the 51-page/160 paragraphs/'facts,' and the motion to strike all in an 11-page
10  Reply memorandum." (Doc. 220, at 3). Kaufman further notes that in *Kinnally v. Rogers*
11  *Corp.*, No. CV-06-2704-PHX-JAT, 2008 WL 5272870, at *2 (D. Ariz. Dec. 12, 2008), this
12  Court struck the additional documents the movant attached to its reply in support of a motion
13  for summary judgment, but also allowed the movant to file a new reply with an extended
14  page limit. The Court deemed that action necessary to permit the movant in *Kinnally* to fully
15  cover all of its objections to the non-movant's voluminous controverting statement of facts.

16          The Court finds that a similar course of action is appropriate here. Though Kaufman's
17  Opposition clearly did not conform to the Local Rules, it appears to the Court that the typical
18  page limitation for a reply might not be sufficient to allow Kaufman to fully cover his
19  objections to Plaintiffs' controverting statement of facts. However, because of the limited
20  amount of time available before this case is scheduled to go to trial, the Court will not strike
21  Kaufman's Opposition and permit him to file an extended reply, as it did in *Kinnally*.
22  Instead, the Court will reluctantly allow the filing of Kaufman's procedurally improper
23  Opposition, including the attached affidavit, and refer to them as necessary to resolve the
24  pending motions for summary judgment.

25          Plaintiffs' motion to strike is therefore DENIED, and Kaufman's motion for extended
26  pages is DENIED as moot.

27
28

2.    *Plaintiffs' Motion to Strike Portions of Defendant Kaufman's Deposition Testimony*

In their controverting statement of facts, Plaintiffs included a motion to strike portions of Defendant Kaufman's deposition testimony in which he identifies KES, rather than himself, as a partner of B2B CFO.  Plaintiffs assert that this testimony should be barred because it expressly contradicts Kaufman's several prior statements in which he appeared to identify himself personally as the partner of B2B CFO.  Defendant Kaufman, in his procedurally improper Opposition discussed above, opposes Plaintiffs motion, arguing that Kaufman has never specifically stated that he personally was a partner of B2B CFO.

First, the Court notes that both Plaintiffs' motion and Defendant's response do not comply with the local rules.  Specifically, Local Rule 7.2(m)(2) only provides for objections, not motions to strike, in a party's responsive statement of facts.  *See Pruett v. Arizona*, 606 F. Supp. 2d 1065, 1074 (D. Ariz. 2009).  That rule further states that such objections "must be stated summarily without argument."  L.R.Civ. 7.2(m)(2).  Furthermore, responses to such objections "must be included in the responding party's reply memorandum for the underlying motion" and may not appear in a separate attachment.  *Id.*

Here, both parties have clearly violated the Local Rules.  Plaintiffs' motion to strike, though filed purportedly under authority of Local Rule 7.2(m)(2), appears in its responsive statement of facts and includes argument that spans nearly three pages.  Defendant Kaufman, on the other hand, acknowledges that his response to Plaintiffs' motion should appear in his Reply in order to conform with Local Rule 7.2(m)(2), though it nevertheless appears in his improper responsive statement of facts because, in Kaufman's words, "that is where B2B placed its Motion."  (Doc. 216, at 24 n.1).

However, regardless of how the Court characterizes the Plaintiffs' filing under Local Rule 7.2(m), the Court finds that it can be denied on its merits.  To support its argument, Plaintiff primarily relies on cases that have disallowed contradictory testimony out of concern that the party offering the testimony was merely attempting to create an issue of material fact to avoid summary judgment.  *See, e.g., Puckett v. Porsche Cars of N. Am., Inc.*, 976 F. Supp. 957, 961 (D. Nev. 1997) ("The general rule in the Ninth Circuit is that a party

cannot establish the existence of a genuine issue of material fact by submitting deposition or affidavit testimony contradicting his or her sworn statements.") (citations omitted). However, the exclusion of contradictory testimony may also be appropriate when it is offered by a party moving for summary judgment. *See Francisco v. Verizon South, Inc.*, 756 F. Supp. 2d 705, 714 (E.D. Va. 2010). But before contradictory testimony may be excluded, a court must determine that it is "sham" testimony that "flatly contradicts" earlier testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991).

Plaintiffs have not pointed to any prior testimony by Kaufman that is flatly contradicted by his more recent assertion that KES is the proper partner of B2B CFO. Though Kaufman and his counsel did routinely use language suggesting that Kaufman was personally a partner of B2B CFO (*e.g.*, doc. 207, at ¶ 85 (Kaufman: "I joined Plaintiff B2B CFO Partners . . . in March 2006 as a partner and quickly became one of B2B's top producers."); *see also id.*, at ¶¶ 75-91), Plaintiffs do not cite any prior testimony where the issue of who was the proper partner of B2B CFO was specifically addressed or where Kaufman denied the possibility that KES was the true partner of B2B CFO. Rather, the language of the prior testimony is sufficiently ambiguous to allow both for interpretations in which Kaufman was the partner of B2B CFO and for interpretations in which Kaufman was acting on behalf of KES, which was the partner of B2B CFO.

Furthermore, these different interpretations are not inconsistent with Kaufman's more recent testimony, in which he continues to use ambiguous language while at the same time identifying KES as the proper partner of B2B CFO. (*See*, *e.g.*, doc. 207, at ¶ 5 ("[Kaufman:] Well, and when you say that I was a partner of B2B CFO, an entity that I owned was a partner of B2B CFO, yes.")). Moreover, as discussed below, there is additional evidence in the record to support both the case where Kaufman personally was a partner of B2B CFO and the case where KES was a partner of B2B CFO. Thus, because of the ambiguity surrounding this unresolved issue of fact, the Court finds that there is no basis to exclude any of Kaufman's testimony as "sham" testimony.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(c). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

## PLAINTIFFS' TRADE SECRET CLAIM

Defendants have moved for summary judgment on Plaintiffs' trade secret claim, alleging that B2B CFO failed to preserve the secrecy of its "Point System," thereby precluding the Point System from qualifying as a trade secret. In response, Plaintiffs contend that B2B CFO has undertaken many reasonable efforts to protect the secrecy of the Point

System, and that Defendants have improperly focused their argument in their motion on only a small portion of the alleged Point System trade secret. Nevertheless, the Parties agree that the Court's decision on Defendants' motion turns only on the issue of whether B2B CFO undertook sufficient efforts to maintain the secrecy of the Point System.

Under Arizona's Uniform Trade Secrets Act, A.R.S. §§ 44-401 *et seq.*, "trade secret" is defined, in part, as "information [that] . . . [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." A.R.S. § 44-401(4)(b). The secrecy, however, need not be absolute. *Enter. Leasing Co. of Phx. v. Ehmke*, 3 P.3d 1064, 1070 (Ariz. Ct. App. 1999). Rather, the owner of the information must only show that the efforts to maintain the secrecy of the information "ensure that it would be difficult for others to discover the information without using improper means." *Id.* The efforts need not be unduly expensive, nor is the owner of the information prohibited from disclosing the information to employees when necessary or from publishing the information on a limited basis for a restricted purpose. *Id.* However, information that is publically revealed or subject to only scant precautions is not eligible for trade secret protection. *Id.*

First, the Court notes that the Point System trade secret at issue is limited to only the portion of the Point System disclosed in B2B CFO's written partnership agreement. This Court previously issued an order denying Plaintiffs' motion to amend its complaint to add any verbal trade secrets from Plaintiff Jerry Mills' verbal presentation. (Doc. 174). Thus, the several verbal elements of the Point System that Plaintiffs refer to in their Response (Doc. 177, at 4) are not part of Plaintiffs' trade secret claim, and any efforts to keep those elements of the Point System secret are irrelevant for the purposes of this motion. Rather, the Court will assess Plaintiffs' efforts to maintain the secrecy of the Point System only with respect to the written portion of the Point System included in the partnership agreement.

Plaintiffs admit that B2B CFO disclosed the written portion of the Point System to Kaufman before Kaufman signed the partnership agreement and without first requesting Kaufman to sign a confidentiality agreement. In Defendants' view, this disclosure precludes the written portion of the Point System from receiving trade secret protection because it did

not involve sufficient efforts to maintain the secrecy of the Point System.

Apart from their irrelevant arguments regarding the verbal elements of the Point System, Plaintiffs argue that B2B CFO's efforts to maintain the secrecy of the written portion were reasonable because B2B CFO provided the partnership agreement to Kaufman only after he had expressed a desire to become a partner of B2B CFO and that the cover letter accompanying the agreement sent to Kaufman included the following provision: "The LLP document is confidential.  Please return this to me if you choose not to join the LLP."  (Doc. 178, at ¶ 31).   Moreover, Plaintiffs argue, the partnership agreement sent to Kaufman contains a confidentiality provision that binds all partners to secrecy.  Though the provision does not apply to prospective partners who have not yet signed the partnership agreement, Kaufman did eventually sign the partnership agreement, and at that point became bound by the confidentiality provision.

Clearly, to the extent that the written information in the partnership agreement about the Point System is a trade secret, B2B CFO did disclose it to Kaufman without requiring him to first sign a confidentiality agreement.  Thus, the issue is whether the disclosure was sufficiently limited such that the information may still qualify as a trade secret under Arizona law.  *See Ehmke*, 3 P.3d at 1070.   Defendants appear to argue that any disclosure of information to a non-employee must be preceded by a confidentiality agreement in order to preserve the information's status as a trade secret.  However, as the Arizona Court of Appeals explained in *Ehmke*, there is no such bright line rule under Arizona law; rather, the efforts to maintain the secrecy of the information must be reasonable.  *Id.*

In fact, the *Ehmke* court cited with approval to a Fifth Circuit case for the proposition that "the owner of a trade secret does not relinquish its secret . . . by limited publication for a restricted purpose."  *Id.* (citing *Metallurgical Indus. Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1200 (5th Cir. 1986)).  In *Metallurgical Industries*, the Fifth Circuit stated the following:

> We conclude that a holder may divulge his information to a limited extent without destroying its status as a trade secret.  To hold otherwise would greatly limit the holder's ability to profit from his secret.  If disclosure to others is made to further the holder's economic interests, it should, in appropriate circumstances, be considered a limited disclosure that does not destroy the requisite secrecy.

790 F.2d at 1200.  The Fifth Circuit's analysis underlying its conclusion is particularly relevant to the facts of this case.

The plaintiff in that case, Metallurgical, was in the business of carbide reclamation and utilized a process that required a zinc recovery furnace.  *Id.* at 1197.  Dissatisfied with a zinc recovery furnace it had purchased from a company called Therm-O-Vac, Metallurgical made several modifications to the purchased furnace in order to improve its performance. *Id.*  When it was in the market for a second furnace, Metallurgical disclosed its modifications to a company called Consarc, hoping that Consarc could provide a furnace with the modifications.  *Id.*  The deal with Consarc fell through, and Metallurgical obtained a second furnace that required modification from Therm-O-Vac.  *Id.*  Metallurgical also disclosed the modifications to La Floridienne, its European licensee of carbide reclamation technology. *Id.* at 1200.  There was no evidence that Metallurgical had confidential relationships with either Consarc or La Floridienne.  *Id.*

Four former employees of Therm-O-Vac subsequently started their own furnace manufacturing company, Fourtek, and sold a furnace with Metallurgical's modifications to another company, Smith International.  *Id.* at 1198.  Alleging that the modifications constituted trade secrets, Metallurgical brought an action under Texas law for misappropriation against the former Therm-O-Vac employees, their company, and Smith International.  *Id.*  The trial court found, in part, that the modifications did not constitute trade secrets and entered a directed verdict for the defendants.  *Id.*

On appeal, the Fifth Circuit addressed Smith International's argument that Metallurgical's disclosure to Consarc and La Floridienne "vitiated the secrecy required to obtain legal protection."  *Id.* at 1200.  Though the court acknowledged that Metallurgical's case would have been stronger if it had provided evidence of confidential relationships with Consarc and La Floridienne, it nevertheless held that Metallurgical's disclosures were "limited and therefore insufficient to extinguish the secrecy" of its trade secrets.  *Id.*  The court noted that the disclosures were not public announcements, but rather were made to businesses with whom Metallurgical was dealing.  *Id.*  The court also relied on the fact that

the disclosures "were made to further Metallurgical's economic interests." *Id.* Thus, because Metallurgical "revealed its discoveries as part of business transactions by which it expected to profit," the Fifth Circuit held that the disclosures did not preclude the possibility that the furnace modifications were protected trade secrets. *Id.* Moreover, with regard to limited disclosures generally, the court stated that "[w]hether a disclosure is limited is an issue the resolution of which depends on weighing many facts." *Id.*

The Court finds that the Fifth Circuit's reasoning in *Metallurgical Industries* is equally applicable to the facts of this case. First, the only disclosure that Defendants allege B2B CFO made of the Point System was to Kaufman. There is no evidence that B2B CFO disclosed the Point System to any other parties. Also, though B2B CFO and Kaufman did not have a confidential relationship, the cover letter accompanying the partnership agreement made it clear that B2B CFO considered the partnership agreement confidential and requested its return in the event that Kaufman turned down the offer to join B2B CFO. Thus, B2B CFO's disclosure certainly did not constitute a public announcement, but rather was for a restricted purpose and limited to only one individual.

Second, B2B CFO sent the partnership agreement to Kaufman with the hope that he would join the partnership. Indeed, Kaufman did subsequently sign the partnership agreement, and thereby became bound by the partnership agreement's confidentiality provision. Hence, much like the disclosures in *Metallurgical Industries*, B2B CFO disclosed the portion of the Point System in the partnership agreement to Kaufman prior to Kaufman's affiliation with B2B CFO as part of a potentially profitable business transaction.

The Court therefore finds that a reasonable jury could weigh these facts and determine that B2B CFO's disclosure to Kaufman was sufficiently limited such that B2B CFO's efforts to maintain the secrecy of its Point System were reasonable. Defendants' motion for partial summary judgment is DENIED.

### PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY

Defendant Kaufman has also moved for summary judgment on Plaintiffs' claim for

breach of fiduciary duty. Kaufman primarily asserts that he owed no fiduciary duty to B2B CFO because he was not a partner of B2B CFO; rather, Kaufman asserts that KES, an LLC of which Kaufman was the sole member, was the partner. Kaufman further argues that, even if he did owe a fiduciary duty to B2B CFO, Plaintiffs have not established that there was any breach of such duty. Finally, Kaufman argues that Plaintiffs' breach of fiduciary duty claim fails for lack of causation and is barred by the economic loss rule.

*1.    Partnership Statuses of Kaufman and KES*

First, the Court finds that Plaintiffs' argument that judicial estoppel bars Kaufman from asserting that KES was the partner of B2B CFO is unavailing. Judicial estoppel "prohibits a litigant from asserting inconsistent positions in the same litigation." *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 917 (9th Cir. 2001). "The doctrine is commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding." *Id.* (internal quotation and citation omitted). As described above with respect to Plaintiffs' motion to strike, Plaintiffs have not pointed to any statements Kaufman made in which he specifically denied the possibility that KES was the partner of B2B CFO. Similarly, Plaintiffs do not identify any legal arguments that Kaufman has made that would be based on such an assertion. Therefore, the Court finds that Kaufman's recent testimony regarding KES's status as a partner of B2B CFO does not directly contradict any of his prior statements in this litigation, and judicial estoppel does not apply.

For similar reasons, the Court also rejects Plaintiffs' assertion that Kaufman's recent testimony is precluded by any of Kaufman's judicial admissions in this case. Though Kaufman is indeed bound by his judicial admissions, *see Am Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988), the Court finds that none of those admissions is necessarily contradicted by the arguments that Plaintiffs seek to preclude. Moreover, because Plaintiffs failed to make this argument when this issue first arose with respect to Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 155) and instead opted to argue based on additional evidence, they have effectively waived the argument. *See*

*White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983).

Plaintiffs' argument, however, that Kaufman can be held personally liable for any breach of fiduciary duty, regardless of whether he or KES was properly the partner of B2B CFO, is correct.  Under Arizona limited liability company law, "[t]he laws of the state or another jurisdiction under which a foreign limited liability company is organized govern its organization and internal affairs and the liability of its members . . . ."  A.R.S. § 29-801(A)(1).  This rule is subject to the limitation that "[a] foreign limited liability company that has obtained a certificate of registration pursuant to [A.R.S. §§ 29-601 et seq.] and its members and managers have no greater rights and privileges than a domestic limited liability company and its members and managers with respect to transactions and relationships with persons who are not members."  *Id.* at § 29-801(B).

Here, KES is a Utah limited liability company; however, it is not clear from the record whether or not KES has obtained a certificate of registration in Arizona.  Nevertheless, both Utah and Arizona law are in accord in recognizing that a director or officer of a corporation may be held personally liable for the torts of a corporate entity in which the director or officer participates. *Armed Forces Ins. Exch. v. Harrison*, 70 P.3d 35, 41 (Utah 2003) ("[A]n officer or director of a corporation is not personally liable for torts of the corporation or of its other officers and agents merely by virtue of holding corporate office, but can only incur personal liability by participating in the wrongful activity.") (internal punctuation and citation omitted); *Bischofshausen, Vasbinder & Luckie v. D.W. Jaquays Mining & Equip. Contractors Co.*, 700 P.2d 902, 908-09 (Ariz. Ct. App. 1985) ("Corporate directors are not personally liable for torts committed by the corporation or by one of its officers merely by virtue of the office they hold.  To be held liable, the directors or officers must participate or have knowledge amounting to acquiescence or be guilty of negligence in the management or supervision of the corporate affairs causing or contributing to the injury.").  Furthermore, courts in both Utah and Arizona have extended this principle of corporate law to limited liability companies. *See d'Elia v. Rice Dev., Inc.*, 147 P.3d 515, 525 (Utah Ct. App. 2006) ("We therefore conclude that *Harrison's* imposition of personal liability on corporate officers

who participate in a corporation's tortious acts . . . also applies to limited liability members or managers."); *Forsyth v. Four Crown Constr., LLC*, No. 1 CA-CV 09-0181, 2010 WL 2403755, at *3-4 (Ariz. Ct. App. June 15, 2010) (applying *Bischofshausen's* rule for potential personal liability for tortious conduct to sole member of limited liability company). Finally, both parties acknowledge that breach of fiduciary duty is a tort under Arizona law. *See, e.g., Standard Chartered PLC v. Price Waterhouse*, 945 P.2d 317, 334 (Ariz. Ct. App. 1996); RAJI (Civil) 4th, Commercial Torts 3 Instruction, at cmt.1.

Here, even if KES is determined to be the partner of B2B CFO, a reasonable jury could only conclude that Kaufman, as the sole member and manager of KES, directly participated in any activities that might constitute a breach of fiduciary duty owed by KES to B2B CFO. Indeed, all of Plaintiffs' allegations related to their claim of breach of fiduciary duty involve Kaufman and actions taken by him . (*See* Doc. 207, at ¶¶ 110-15, 140-51, 156-59). Moreover, Kaufman does not dispute his participation in any alleged breaches of fiduciary duty, but rather only incorrectly argues that, because Plaintiffs did not assert a breach of fiduciary duty claim against KES, Plaintiffs' claim will not survive if KES is determined to be the proper partner of B2B CFO. Thus, personal liability may be imposed on Kaufman for any breaches of fiduciary duty in which he personally participated regardless of whether he or KES is deemed to be the partner of B2B CFO.

Furthermore, Defendant Kaufman has failed to establish that no genuine issue of fact exists as to whether Kaufman or KES was the proper partner of B2B CFO. Kaufman relies mostly on a document entitled "Attachment to Partnership Agreement of B2B CFO/CIO, LLP" ("Attachment"), which Kaufman signed on his first day of training with B2B CFO, to support his argument that KES was the partner. On the portion of that document that instructs the partner to "declare your legal identity and EIN/SSN for your K-l from the LLP," Kaufman wrote "Kaufman Enterprise Solutions, LLC," entered what is presumably KES's EIN, and also checked a box labeled "LLC." (Doc. 228, Ex. C). Similarly, the form indicates that a person wishing to personally become a partner of B2B CFO would instead write his or her own name, mark the box labeled "sole proprietorship," and provide a social

1   security number.  (*Id.*).  Thus, Kaufman argues that this "key document" establishes that
2   KES, rather than Kaufman personally, was B2B CFO's partner and owed B2B CFO a
3   fiduciary duty.  Kaufman further argues that additional evidence supports a finding that KES
4   was B2B CFO's partner, including that B2B CFO issued K-1 statements directly to KES for
5   tax purposes, that KES provided a monthly summary to B2B CFO of the partnership fees
6   owed by KES to B2B CFO, and that monthly partnership fees were paid to B2B CFO by
7   KES.  (Doc. 228, Exs. E-H)

8          Plaintiffs respond that the Attachment does not establish that KES was a partner of
9   B2B CFO and further contend that additional evidence demonstrates that a genuine issue of
10  material fact exists as to whether Kaufman was a partner of B2B CFO.  Specifically,
11  Plaintiffs note that Kaufman personally signed the B2B CFO partnership agreement, and
12  several amendments thereto, in his own name and without any mention of KES.  (Doc. 207,
13  at ¶ 43).  Further, Plaintiffs contend that the Attachment, which Kaufman executed nearly
14  two weeks after signing the partnership agreement, was not intended to alter the partnership
15  agreement and merely functioned to allow Kaufman to make the relevant declarations for tax
16  purposes.  (*Id.* at ¶ 56).  Additionally, Plaintiffs note that B2B CFO issued its semi-annual
17  distribution checks directly to "Ken Kaufman," not KES, and that Kaufman routinely held
18  himself out to the public and Plaintiffs as a partner of B2B CFO.  (*Id.* at ¶¶ 65-70).

19         The Court finds that Kaufman's reliance on the Attachment, and the subsequent K-1
20  statements that were issued to KES, is misplaced.  Other courts have considered K-1
21  statements to determine a party's status as a partner; however, such statements are not
22  dispositive.  *See*, *e.g.*, *Randell v. United States*, 64 F.3d 101, 108-09 (2d Cir. 1995) (finding
23  plaintiff failed to allege facts to dispute proof of plaintiff's partnership status based on
24  Schedules K-1 identifying plaintiff as a partner); *Mackey v. Owens*, 182 F.3d 915, 1999 WL
25  423077, at *3-4 (5th Cir. 1999) (same).  Rather, based on all of the evidence presented by
26  the parties, the Court finds that a reasonable jury could conclude that Kaufman, and not KES,
27  was a partner of B2B CFO.

28

1    *2.    Breach of Fiduciary Duty*

2            Furthermore, the Court finds that genuine issues of material fact exist as to whether

3    any fiduciary duties owed to B2B CFO by either Kaufman or KES were breached.  Under

4    Arizona partnership law, a partner owes a duty of loyalty to the partnership that requires the

5    partner "[t]o account to the partnership and hold as trustee for it any property, profit or

6    benefit derived by the partner in the conduct and winding up of the partnership business or

7    derived from a use by the partner of partnership property, including the appropriation of a

8    partnership opportunity," A.R.S. § 29-1034(B)(1), and "[t]o refrain from competing with the

9    partnership in the conduct of the partnership business before the dissolution of the

10   partnership."  *Id.* at § 29-1034(B)(3).

11           Plaintiffs have presented evidence that suggests that Kaufman operated a competing

12   business, KES, during the time that he or KES was a partner of B2B CFO.  It is not disputed

13   that both B2B CFO and KES provided part-time CFO services.  Furthermore, Kaufman has

14   admitted that he continued to operate KES during the entire time he was affiliated with B2B

15   CFO, (Doc. 207, at ¶ 114), though the parties dispute the extent to which Kaufman's

16   activities with KES were known or approved by B2B CFO.  On his website, Kaufman also

17   represented that he ran KES during the time that he was affiliated with B2B CFO.  (*Id.* at ¶

18   115).  Additionally, Kaufman may not have accounted to B2B CFO for all revenues

19   generated by KES or Kaufman during that time.  (*Id.* at ¶¶ 120-23, 138-39).  Finally,

20   financial statements prepared by Kaufman reveal that KES may have generated more revenue

21   providing CFO services than Kaufman was reporting and paying to B2B CFO.  (*Id.* at ¶¶

22   123-37).  Thus, the Court finds that a genuine issue of material fact exists as to whether

23   Kaufman breached any fiduciary duty he may have owed to B2B CFO by operating a

24   business that competed with B2B CFO.

25           Moreover, a genuine issue of material fact also exists as to whether Kaufman

26   improperly appropriated a partnership opportunity from B2B CFO by hiring Bill Baker.

27   Though the parties do not dispute that Kaufman encouraged Baker to join B2B CFO and that

28   Baker was not interested in joining B2B CFO, it is also undisputed that Kaufman learned of

Baker's interest in the part-time CFO business through B2B CFO and that Kaufman subsequently hired B2B CFO as an independent contractor for KES without first notifying B2B CFO or seeking its approval.  A reasonable jury weighing these facts could find that Kaufman's hiring of Baker to work for KES constituted a breach of fiduciary duty under Arizona law.

*3.      Defendant's "Lack of Causation" Argument*

The Court also finds that Defendant Kaufman's argument that Plaintiffs' claims fail for lack of causation is without merit.  Kaufman's causation argument primarily relies on his assertion that KES did not compete with B2B CFO and therefore could not have caused B2B CFO any damages.  However, as stated above, there is a genuine issue of material fact as to whether KES competed with B2B CFO in violation of any fiduciary duties owed to B2B CFO.   Further, in Arizona, Plaintiffs can both recover damages and disgorge any gains the defendant derived from such a breach of fiduciary duties. *See AMERCO v. Shoen*, 907 P.2d 536, 541-42 (Ariz. Ct. App. 1995).  Here, Plaintiffs have provided evidence that could allow a reasonable jury to find that Plaintiffs suffered damages, or that Kaufman or KES made improper gains, as a result of any alleged breach of fiduciary duties owed to B2B CFO. (Doc. 207, at ¶¶ 123-34, 138-39, 152-54, 160).

*4.      Economic Loss Rule*

Finally, Defendant Kaufman's argument that Plaintiffs' claims are barred by the economic loss rule is also without merit.  The economic loss rule is "a common law rule limiting a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or other property." *Flagstaff Affordable Hous. Ltd. P'Ship v. Design Alliance, Inc.*, 223 P.3d 664, 667 (Ariz. 2010).  Arizona courts have typically limited the application of the rule to product liability and construction defect cases. *See In re Gosnell Dev. Corp. of Ariz.*, 331 Fed. App'x 440, 441 (9th Cir. 2009).  Defendant cites to no cases in which an Arizona court has applied the economic loss rule to a claim for breach of fiduciary duty, nor has Defendant offered any compelling arguments for extending the rule to bar Plaintiffs' claim for breach of fiduciary duty.

Furthermore, though Arizona courts are silent on the issue, courts outside of Arizona have declined to extend the economic loss rule to claims for breach of fiduciary duty under Arizona law. *See Gosnell*, 331 Fed. App'x at 441-42; *SCF Ariz. v. Wachovia Bank, N.A.*, No. 09 Civ. 9513(WHP), 2010 WL 5422505, at *9-11 (S.D.N.Y. Dec. 14, 2010). In *Gosnell*, the Ninth Circuit briefly reviewed Arizona cases in which the Arizona Court of Appeals "permitted a partner to recover (or at least pursue) solely pecuniary damages from another partner that breached his or her fiduciary duty to the partnership, while acting under an oral or written partnership agreement, with no mention of the economic loss rule." *Id.* at 441 (citations omitted). That court subsequently found "no basis for believing that the law of Arizona currently allows a broader application" of the economic loss rule, such that it could be applied to cases that do not involve product liability or construction defects. *Id.*

Similarly, in *SCF Arizona*, the Southern District of New York also declined to apply the economic loss rule to the plaintiff's breach of fiduciary duty claim. 2010 WL 5422505, at *11. In particular, the *SCF Arizona* court determined that the Arizona Supreme Court's reasoning in *Flagstaff Affordable*, in which the court discussed the economic loss rule at length, "indicates [the Arizona Supreme Court] would not extend the economic loss rule to breach of fiduciary duty claims." *SCF Ariz.*, 10 WL 5422505, at *10. The *SCF Arizona* court further noted that its conclusion was supported by policy considerations underpinning the economic loss rule. *Id.* at *11 ("[W]here a contract places the parties in a relationship in which the law then imposes certain duties recognized by public policy, the gravamen of the subsequent action for breach is in tort, not contract.") (internal punctuation and citation omitted).

The Court finds persuasive the reasoning in *Gosnell* and *SCF Arizona*. Therefore, Plaintiffs' breach of fiduciary duty claim is not barred by the economic loss rule. Defendant Kaufman's motion for summary judgment on Plaintiffs' breach of fiduciary duty claim is DENIED.

**CONCLUSION**

Accordingly,

**IT IS ORDERED** denying Defendants' Motion for Partial Summary Judgment on Plaintiffs' Trade Secret Claim (Doc. 169).

**IT IS FURTHER ORDERED** denying Defendant Kaufman's Motion for Partial Summary Judgment on Plaintiffs' Claim for Breach of Fiduciary Duty (Doc. 199).

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion to Strike Defendant Kaufman's Opposition to Plaintiffs' Controverting Statement of Facts (Doc. 217).

**IT IS FURTHER ORDERED** denying as moot Defendants' Motion to Exceed Page Limit (Doc. 220).

DATED this 5th day of March, 2012.

_____
James A. Teilborg
United States District Judge